**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**LAUREN RECTOR**                                                                                           **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO.** 1:25cv200 HSO-BWR

**HOME OF GRACE CORPORATION**                                                          **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

     **COMES NOW** the Plaintiff, Lauren Rector, by and through counsel, Watson & Norris, PLLC, brings this action to recover damages of violations of her rights pursuant to Title VII of the Civil Rights Act of 1964 for pregnancy discrimination, and Title VII of the Civil Rights Act of 1964 for sex discrimination against the Defendant, Home of Grace Corporation. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

     1.     Plaintiff, Lauren Rector, is a female resident of Harrison County, Mississippi.

     2.     Defendant, Home of Grace Corporation, can be served with process by serving its registered agent, Registered Agents, Inc., 270 Trace Colony Park. Suite B, Ridgeland, Mississippi 39157.

**JURISDICTION AND VENUE**

     3.     This Court has federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964.

     4.     This Court also has personal and subject matter jurisdiction over the Defendant and venue is proper in this court.

     5.     Plaintiff timely filed a Charge of Discrimination with the EEOC on September

23, 2024, a true and correct copy of is attached as Exhibit "A."  Plaintiff filed an amended charge on October 1, 2024, a true and correct copy of is attached as Exhibit "B." The EEOC issued a Dismissal and Notice of Right to Sue on April 4, 2025, a true and correct copy of which is attached as Exhibit "C."  Plaintiff timely files this cause of action within ninety (90) days of receipt of her Dismissal and Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 34-year-old female resident of Harrison County, Mississippi.

7. In December 2023, she became an intern at Home of Grace Corporation (HGC).

8. During March 2024, she was hired as an On-Duty Staff Member at HGC.

9. The main campus was in Gautier the main office was in Vancleave.

10. Around the end of July or early August 2024, Ms. Rector became aware that she was pregnant.

11. In early August 2024, Ms. Rector scheduled her initial prenatal medical appointment for August 13, 2024.

12. She intended to get medical confirmation of her pregnancy before announcing it to HGC.

13. Before, she could go to the appointment on the 13th, however, on August 12, 2024, Women's Campus Director Noelle Pee informed Ms. Rector that she was being terminated, allegedly due to becoming pregnant out of wedlock.

14. Ms. Rector's roommate, Adrian McMillin, who was also employed by HGC, was also terminated on the same day because she was aware that Ms. Rector was pregnant and did not notify her supervisor.

15. On August 14, 2024, Ms. Rector received a letter from Ms. Pee.

16. The letter stated, "This letter confirms our discussion that as of Monday, August 12, 2024, you are no longer employed with the Home of Grace. As discussed, we think this is the best decision, because of an inappropriate relationship leading to pregnancy out of wedlock, withholding the information from your supervisor and sharing it with other staff, poor witness and going against the Employee code of Conduct…"

17. On September 23, 2024, Ms. Rector filed an EEOC Charge of sex/pregnancy discrimination against HGC.

18. On October 1, 2024, Ms. Rector filed an amendment to that EEOC Charge.

19. On November 4, 2024, in response to Ms. Rector's Charge, HGC submitted a Position Statement to the EEOC.

20. HGC's Position Statement alleges that, "While her becoming pregnant outside of wedlock was sufficient to terminate her employment given that Home of Grace is a Christian organization and its employees "are expected to behave according to Biblical teachings," that was not the reason she was terminated. Indeed another employee became pregnant as a result of a relationship outside of wedlock and was not fired. Recor was terminated because the circumstances that led to and surrounded her pregnancy became a distraction to the clients' recovery process."

21. Ms. Rector contends that both in the past and currently she puts forth her best effort to live according to Christian principals, yet as is consistent with Christian teaching, she admits that she makes mistakes, and she owns that she did become pregnant out of wedlock.

22. She contends, however, that this allegation is in direct contradiction with the

3

letter she received on August 14, 2024, from Ms. Pee, which stated, "This letter confirms our discussion that as of Monday, August 12, 2024, you are no longer employed with the Home of Grace. As discussed, we think this is the best decision, because of an inappropriate relationship leading to pregnancy out of wedlock, withholding the information from your supervisor and sharing it with other staff, poor witness and going against the Employee code of Conduct…".

23. Note that in this quotation, the first reason given is the pregnancy itself.

24. As will be explained in detail below, she planned to notify her superiors but had not obtained medical confirmation of the pregnancy yet.

25. The references to "poor witness" and "code of conduct" are essentially redundant as statements against becoming pregnant outside of wedlock.

26. Notably, no reference was made in this letter to any distraction to clients' recovery processes.

27. That false allegation along with the maligning false allegation of "men" (plural) visiting her trailer did not come until later, when HGC submitted its Position Statement to the EEOC.

28. HGC's Position Statement alleges that, "In April of 2024, Rector moved from a part-time employee to a full-time employee and continued to serve in the same "staff on duty" role. During July 2024, she began to miss work because she was sick. Rector initially attributed her illness to the possibility of mold in the mobile home in which she lived, so the mobile home park manager was contacted to ensure that was not the case. The manager made sure there was no presence of mold, and she also informed Home of Grace that Rector had been having men stay with her at her mobile home."

29. Ms. Rector contends this allegation mischaracterizes the events that occurred.

30. Ms. Rector and Ms. McMillin moved into the trailer park home (which is owned by HGC) in mid-March 2024.

31. Around that same time, she started in her part-time role at HGC, which soon became a full-time position.

32. As early as May 2024, Ms. Rector began suffering from upper respiratory symptoms, e.g., coughing, sinus congestion, difficulty breathing, etc.

33. These respiratory problems caused her to have absences between May, June, and July.

34. By late June and early July, Ms. Rector and Ms. McMillin began to suspect that the cause of Ms. Rector's frequent sickness was mold that was growing in the walls of the trailer home.

35. On July 3, 2024, Ms. McMillin emailed the Mobile Home Manager, Amanda Graham, and notified her about the mold and included pictures of mold and places where water was plainly visible on the walls and in fixtures.

36. Ms. Graham responded that she would come to inspect the trailer home.

37. On July 10, 2024, Ms. Graham and Maintenance Technician Hunter Harris came to evaluate the trailer home.

38. After she observed the mold and water, Ms. Graham stated that she would have Ms. Rector and Ms. McMillin moved to a different trailer, but she did not know when the new trailer would be ready, and she did not want them to call her every week asking if it was ready yet.

39. Ms. Graham then stated she would have Mr. Harris come out and replace the sheet rock in Ms. McMillin's bathroom, where the wall was wet and damaged.

40. Ms. Graham also said she would have Mr. Harris "treat the mold" in the meantime.

41. This did not happen, however, and the mold remained. Ms. Rector attempted to spray the spots of mold with bleach, yet they kept coming back.

42. On July 11, 2024, Ms. Rector was notified by her doctor's office that her nasal swab had tested positive for MRSA, a very serious bacterial infection.

43. Ms. Rector notified Ms. Pee about this, and Ms. Pee offered Ms. Rector that she could move onto the HGC campus to get away from the mold.

44. Ms. Rector moved onto the HGC campus, but she was very sick for over a week.

45. Nausea and vomiting were major side effects associated with the antibiotic that Ms. Rector took to address this infection, so she was frequently nauseated and vomiting during this time.

46. On or around July 20, 2024, Ms. Rector finally got over the sickness and returned to the trailer.

47. On or around July 29, 2024, Ms. Rector's mother, out of serious concern for Ms. Rector's health, texted Counselor Kathryn Kihyet Beatty.

48. The text stated that according to Mississippi landlord/tenant law, if a tenant has an unsafe living situation (e.g., mold), and provides the landlord with a written request to address the unsafe situation, the landlord is required to address it within two weeks.

49. The text went on to state that since it had been over three weeks since Ms.

McMillin had sent a written notification to Ms. Graham about the situation, an appropriate intervention to address the situation was overdue.

50. Ms. Kihyet Beatty shared this text with Ms. Pee and Chief of Operations Ryan Chester, who then addressed the matter with Ms. Graham.

51. HGC's Position Statement alleges that, "Noelle Pee, the director of Home of Grace's women's campus, discussed the issue with Rector. Rector stated that men staying with her was not a common occurrence, but she did have a male friend stay with her on weekend of Fourth of July. On July 30, 2024, Pee provided Rector a written warning for her behavior and reminded her "to make sure that if we couldn't talk about it with our clients in devotion, we shouldn't be doing it."

52. Ms. Rector contends that again this allegation mischaracterizes the events that occurred.

53. On July 30, 2024, Ms. Pee texted Rector, and wrote, "I am doing meetings with everyone on staff over the next couple days. I just sent you a meeting request for today at 4:30."

54. Ms. Rector went to work at her usual time of 4pm, and she met with Ms. Pee at 4:30pm.

55. During that meeting, Ms. Pee informed Ms. Rector about the text that was received from Ms. Rector's mother.

56. Ms. Pee informed Ms. Rector that in response to this text, Mr. Chester had been notified, and he had addressed the matter directly with Ms. Graham.

57. Ms. Pee further stated that Ms. Graham had responded to Mr. Chester that the new trailer for Ms. Rector and Ms. McMillin to move in would be ready by the following

week.

58. Ms. Pee then went on to state that according to Ms. Graham, Ms. Rector had been having a male guest stay with her every weekend and that she (Ms. Graham) suspected, because of her symptoms, that Ms. Rector was pregnant.

59. Ms. Rector responded that she did not regularly have male guests stay with her, but around the July 4th holiday, a male friend (with whom she has been friends for eight years) did stay with her.

60. She denies that any other men had stayed with her or that this one friend stayed with her on a regular basis.

61. Ms. Rector further noted that she works almost every weekend, so it did not make sense that anyone would be there at her house.

62. In response to this, Ms. Pee stated, "Well we just want to avoid the appearance of any wrongdoing".

63. Ms. Rector acknowledged understanding.

64. Contrary to HGC's allegation, no written warning was issued, and Ms. Rector assumed that the issue was resolved.

65. After the meeting, Ms. Rector texted Ms. Pee and wrote, "I've been trying to figure out why Amanda thinks someone has been at our house on the weekends, and the only thing that makes sense is that Adrian recently got her car and she's off work on the weekends."

66. Ms. Pee did not respond to this text.

67. Ms. Rector contends that Ms. Graham's false allegations of multiple visits from a male visitor on the weekends was likely motivated out of a retaliatory animus since

Ms. Rector's text had alerted Mr. Chester to Ms. Graham's negligence in addressing the mold situation.

68. HGC's Position Statement alleges that, "Shortly thereafter, Rector communicated to her roommate, McMillin, that she (Rector) was pregnant. McMillin discussed the circumstances surrounding Rector's pregnancy with clients at the women's campus, and the clients began discussing amongst themselves and with Pee both the circumstances surrounding Rector's pregnancy and the fact that men had been living with/staying with Rector at her mobile home. Clients also discussed amongst themselves and shared with Pee the rumor that Rector's pregnancy was the result of her relationship with a married man. As a result, of the distraction that her actions caused among clients, Rector was terminated on August 12, 2024. McMillan was also terminated for discussing with clients the circumstances surrounding Rector's pregnancy and Rector's having men live with/stay with her."

69. Ms. Rector contends this allegation is false and misleading.

70. The events that occurred were as follows, during the first week of August 2024, Ms. Rector tested positive for pregnancy with a store-bought test.

71. Afterwards, Ms. Rector confided in Ms. McMillin about the positive test result and asked Ms. McMillin not to disclose the result to anyone.

72. Ms. Rector stated to Ms. McMillin that she wanted to attend an OBGYN appointment scheduled for August 13th, to confirm the pregnancy before announcing it to anyone.

73. Ms. McMillin agreed not to disclose the result to anyone.

74. On August 10, 2024, however, Ms. Rector decided to disclose her probable

9

pregnancy to On-Duty Staff Member Amy Clayton.

75. Ms. Rector and Ms. Clayton had gone through the HGC program together and were friends, so Ms. Rector assumed she could trust Ms. Clayton to keep the information confidential.

76. Ms. Rector told Ms. Clayton that she had an OBGYN appointment scheduled on August 13th, to confirm the pregnancy, and that she planned to notify her supervisors about it once it was confirmed by her doctor.

77. Ms. Clayton agreed to keep the information confidential and not to disclose it to any of the supervisors.

78. On or around August 12, 2024, however, Ms. Clayton notified Ms. Pee that Ms. Rector was pregnant.

79. That morning, Ms. Pee phoned Ms. Rector and instructed her to come for a meeting at 11am.

80. Before Ms. Rector left the house, she received a call from Ms. McMillin, who stated that she had just been terminated, allegedly for knowing about the pregnancy and not notifying the supervisors about it.

81. When Ms. Rector arrived to meet with Ms. Pee, Ms. Pee stated that on July 30, 2024, Mr. Chester had informed her (Ms. Pee) that if Ms. Graham's suggestion that Ms. Rector was pregnant was true, that Ms. Rector should be terminated.

82. Ms. Pee went on to state, "I don't want to fire you. You are a great employee; we have never had any issues."

83. Ms. Rector explained that she was committed to remaining abstinent but had had sex one time; that she had used contraception, but it had failed.

84. She further explained that she had previously had a miscarriage, so she wanted to get confirmation about her pregnancy from her doctor before she disclosed it to her supervisors.

85. Contrary to HGC's allegation, the question of the father's marital status was never addressed by either Ms. Pee or Ms. Rector on August 10th, when Ms. Pee was notified that she was terminated.

86. Moreover, as will be discussed further below, it is patently false to allege that clients of HGC had been (at that point) discussing Ms. Rector's pregnancy, much less the marital status of the child's father.

87. Ms. Rector further noted that whereas she (Ms. Rector) was being terminated simply for being pregnant, in addition to the female employee comparator referred to in HGC's first allegation above, Ms. Rector is aware of another female employee who remained employed at HGC while living in the same mobile home park as Ms. Rector even though she was living with her boyfriend while unmarried, and HGC was aware of this.

88. This female employee never became pregnant, but that was because she was physically unable to become pregnant secondary to a previous surgery.

89. As evidenced by this recounting of the events that occurred, Ms. McMillin did not discuss the circumstances surrounding Rector's pregnancy with clients at the women's campus, as alleged.

90. This allegation is false and disingenuous.

91. None of the clients learned about Ms. Rector's pregnancy until after she and Ms. McMillin were terminated and none of them learned about it from Ms. Rector and/or

Ms. McMillin.

92. Thus, Ms. Rector's pregnancy was never a distraction to clients and their recovery process, as alleged by HGC.

93. Or, if it was, it was not due to any statements made by Ms. Rector and/or Ms. McMillin, but rather it was due to rumors spread by others, and it did not happen until after they were terminated.

94. Around the beginning of September 2024, Ms. Pee indicated to Ms. Rector that she and Mr. Chester were interested in rehiring Ms. Rector after she delivered her baby.

95. Ms. Rector did not give a definitive response to this offer.

96. Around the end of September 2024, Ms. Rector and Ms. McMillin were finally moved into a new trailer at the mobile home park.

97. Also around the end of September 2024, soon after HGC was informed that Ms. Rector had filed an EEOC Charge of Discrimination, Ms. Pee was terminated.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE VII - PREGNANCY DISCRIMINATION

98. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 97 above as if fully incorporated herein.

99. Plaintiff has been discriminated against in the terms and conditions of her employment on the basis of her sex, female, and pregnancy. Plaintiff is a member of a protected class, female, and she was pregnant.

100. Plaintiff has been harmed as a result of the Defendant's discrimination, and the Defendant is liable to the Plaintiff for the same.

101. The acts of the Defendant constitute a willful intentional violation of Title VII of the Civil Rights Act of 1964, as amended, and entitle Plaintiff to recovery of damages, both compensatory and punitive in nature.

### **COUNT II: VIOLATION OF TITLE VII - SEX DISCRIMINATION**

102. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 101 above as if fully incorporated herein.

103. Defendant discriminated against Plaintiff because of her sex, female, based on the facts identified above which constitutes violation of Title VII of the Civil Rights Act of 1964.

104. Defendant was motivated to discriminate against Plaintiff because she is female.

105. Plaintiff has suffered lost wages, benefits because of her termination and other pecuniary losses as well as deep humiliation, anxiety and emotional distress.

106. The unlawful actions of Defendants complaint of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff giving rise to to both compensatory and punitive damages under Title VII.

### **PRAYER FOR RELIEF**

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages;
2. Reinstatement or future wages in lieu of reinstatement;
3. Compensatory damages;
4. Punitive damages;
5. Attorney's fees;
6. Lost benefits;

7. Pre-judgment and post-judgment interest;
8. Costs and expenses; and
9. Such further relief as is deemed just and proper.

THIS the 23rd day of June 2025.

                                          Respectfully submitted,

                                          LAUREN RECTOR, PLAINTIFF

                                By: /s/Louis H. Watson, Jr.
                                    Louis H. Watson, Jr.  (MB# 9053)
                                    Nick Norris (MB# 101574)
                                    Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive #365
Flowood, MS 39232
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
       nick@watsonnorris.com